[No. B068926. Second Dist., Div. Three. Aug. 4, 1994.]

RONALD REWALD et al., Plaintiffs and Appellants, v.
SAN PEDRO PENINSULA HOSPITAL et al., Defendants and
Respondents.

COUNSEL

Newson & Silverman and Isaac H. Braddock for Plaintiffs and Appellants.

O'Flaherty & Belgum, John J. Weber, Horvitz & Levy, David S. Ettinger, Hagenbaugh & Murphy, Matthew R. Rungaitis and Jamie B. Skebba for Defendants and Respondents.

OPINION

CROSKEY, J.—Plaintiffs Ronald Rewald (Ronald) and Nancy Rewald (Nancy; collectively plaintiffs) appeal from orders of dismissal entered in favor of defendants San Pedro Peninsula Hospital (Hospital) and Dr. Melvin Snyder (Snyder; collectively defendants) after the court sustained, without leave to amend, defendants' demurrers to plaintiffs' fourth amended complaint for medical malpractice and loss of consortium.[1] The demurrers were based on the statute of limitations for medical malpractice actions (Code Civ. Proc., § 340.5).[2]

Although there are several statute of limitations issues raised in this appeal, we address only one of them because it is dispositive.[3] That issue is:

---

[1]Actually, plaintiffs' notice of appeal states they are appealing from the trial court's order which sustained the demurrers. Such an order is, of course, not appealable. (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 878 [150 Cal.Rptr. 606].) However, a review of the order sustaining the demurrers can be made in an appeal from a subsequently entered order of dismissal. (*Ibid.*) In this case, orders of dismissal were in fact entered in favor of defendants. We therefore construe the appeal to have been taken from those orders of dismissal.

[2]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

Section 340.5 states in relevant part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."

[3]Thus, for example, we have no need to address the tolling impact which section 352, subdivision (a) (tolling the commencement of the running of a prisoner's statute of

Does the 90-day tolling period provided for in section 364,[4] as construed in *Woods* v. *Young* (1991) 53 Cal.3d 315 [279 Cal.Rptr. 613, 807 P.2d 455], apply not only to the one-year period in section 340.5 (as so held in *Woods* v. *Young*), but also to the three-year "outside" limitations period? As we answer this question in the negative, plaintiffs' suit is time-barred and the orders of dismissal must be affirmed.

## BACKGROUND OF THE CASE

Plaintiffs filed this action on June 3, 1991. The operative complaint is plaintiffs' fourth amended complaint, which was filed March 25, 1992.

According to the allegations in the fourth amended complaint, for a period of time prior to March 10, 1988, Ronald was an inmate at the federal correctional institute on Terminal Island; while incarcerated there, he was subjected to negligent medical care in that he was not permitted the services of outside doctors for follow-up care for surgery on his lower back, surgery which he had undergone prior to entering prison. His condition deteriorated over a period of time and necessitated his being admitted to defendant Hospital for emergency care on March 10, 1988, "to correct the injuries to his low back caused by the negligent failure of Federal Prison physicians." Defendant Snyder was engaged to examine and care for Ronald at the Hospital.

Plaintiffs allege that from and after the time defendants began caring for Ronald, they failed to diagnose and treat in a timely manner a herniated lumbar disc in his lower back and also improperly cared for his general condition, causing him to suffer injuries and damages. When Ronald awoke from surgery at the Hospital, he was immediately aware of pain from the surgery and the continuance of the "back symptoms with which he had presented to Defendants."

Plaintiffs further allege that defendants told Ronald that the result of their care "was the best that could be provided under the circumstances and he

---

limitations) has on the one-year period described in section 340.5, even though that issue was extensively argued by the parties both orally and in their briefs.

We requested and received, and have considered, the parties' supplemental briefs on the issue on which this case in fact is decided.

[4]Section 364 states in relevant part: "(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

" . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

was 'lucky to be alive' or words to that effect." Upon being released from defendants' care, Ronald was again incarcerated and remained incarcerated. Plaintiffs allege that he has been denied the right to an independent medical examination by a doctor of his choice, has not "been given the opportunity of being examined by a qualified medical expert regarding his condition or its cause," and "had no way of formulating an opinion or suspicion of wrongdoing on the part of Defendants." Rather, "until the time of discovery by plaintiffs' counsel, [Neil Newson], [Ronald] was of the belief, based on the aforesaid representations of the defendants, that the defendants had saved his life and that his deteriorated state of health was merely the best result that could be expected from the condition giving rise to the necessity for the surgery."[5]

The fourth amended complaint alleges that because of the inadequate care given to him by defendants, Ronald suffered permanent loss of bladder and bowel control, impotence and partial paralysis as well as mental and physical pain and suffering. Because of defendants' negligence, Nancy has been

---

[5]Plaintiffs' *original* complaint states that (1) plaintiffs consulted the law firm of Neil C. Newson & Associates in November 1988 regarding a possible action *against defendants* and (2) in December 1990, after obtaining Ronald's medical records and consulting a qualified medical expert, said law firm informed plaintiffs there was a cause of action against defendants. The day after the original complaint was filed, plaintiffs filed an amended complaint which changed, from November 1988 to November 1990, the date plaintiffs consulted with the Newson firm *about defendants*, and which changed the December 1990 "discovery" date to March 1991. The second and third amended complaints also allege these November 1990 and March 1991 dates and allege that plaintiffs sought representation regarding *defendants*.

In their fourth amended complaint, plaintiffs gave different dates and a different reason for consulting with the Newson firm. Plaintiffs alleged they consulted the Newson firm in December 1989 for the purpose of obtaining aid with Ronald's in propria persona claim for damages which he had filed against the federal government on February 21, 1989, "for what he believed to be injuries caused by [the government's] negligence." (This claim against the federal government was based upon Ronald's medical care, or lack thereof, during his incarceration at the federal prison.) When Ronald was unsuccessful in obtaining a settlement on this federal claim, he retained the Newson firm in December 1989 and said firm "immediately undertook the task of obtaining plaintiff's medical records from the Federal Prison Authorities." It was not until November 1990 that the law firm was able to obtain the records, after which plaintiff discovered defendants' negligence.

Ronald filed suit against the federal government and others on January 24, 1990. As part of its demurrer to plaintiffs' third amended complaint, defendant Hospital included a copy of the complaint in that federal action. That complaint alleges, in part, that Ronald was admitted to prison in January 1986 and had a "very bad back" at that time. From January 1986 to March 1988, the prison authorities and doctors ignored his requests for medical examination and treatment for his back. In March 1988, he collapsed from the condition of his back and was taken to the inmate medical facility but received no care there for many days "at which time he had lost all feelings from his waist down as well as control over his bladder and bowel movements." Finally he was taken to defendant Hospital and received surgery twice.

permanently deprived of the consortium of her husband Ronald, and has herself suffered emotional and physical distress.[6]

Defendants demurred to the fourth amended complaint, contending that the action is barred by the statute of limitations. Their demurrers were sustained and orders of dismissal in favor of defendants were entered.

## ISSUES ON APPEAL

As noted earlier, although this appeal presents more than one statute of limitations issue, we need address only one. Does the judicial tolling provision announced in *Woods* v. *Young, supra,* 53 Cal.3d 315 apply to this case so as to extend the outside three-year limitations period set out in section 340.5?

## DISCUSSION

■ Section 340.5 has two limitations periods, the one-year "discovery" period and the three-year "outside" period. Both of these periods must be met by a plaintiff in order to avoid a statute of limitations affirmative defense. (*Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 757-758 [199 Cal.Rptr. 816].) We address the three-year period here.

■ Defendants' allegedly negligent conduct occurred on March 10, 1988. Plaintiffs did not file this action until June 3, 1991, more than three years later. However, plaintiffs contend their three-year period was extended for ninety days by section 364, as that section was interpreted by the Supreme Court in *Woods* v. *Young, supra,* 53 Cal.3d 315. We disagree.

Section 364 provides in part that before a plaintiff can bring an action against a health care provider for professional negligence, the defendant must be given a notice of the plaintiff's intention to commence the lawsuit and the notice must be given at least 90 days prior to its commencement. In *Woods,* the court held that the *1-year* limitations period in section 340.5 is tolled for 90 days when a plaintiff, *within the last 90 days of the 1-year limitations period,* gives a health care provider the section 364 notice of intent to file a medical malpractice action. (*Woods* v. *Young, supra,* 53 Cal.3d at pp. 319, 325.)

---

[6]Plaintiffs contend that Nancy's cause of action stands or falls according to whether Ronald's cause of action is timely. They cite *Priola* v. *Paulino* (1977) 72 Cal.App.3d 380 [140 Cal.Rptr. 186]. In that case the court stated: "It has been held that an action must be filed within one year from the date of injury which gives rise to the loss of consortium." (*Id.* at p. 383.) The court in *Uram* v. *Abex Corp.* (1990) 217 Cal.App.3d 1425, 1438 [266 Cal.Rptr. 695] noted that this one-year statute is subject to the delayed discovery rule.

Here, the 90-day notice was given on March 1, 1991, about a week before the 3-year statute would run. This lawsuit was filed the following June. Plaintiffs contend the 90-day tolling period is applicable to the *3-year* "outside" limitations period in section 340.5. The *Woods* court expressly left open the question whether the 90-day provision in section 364 applies to the 3-year period. (*Woods* v. *Young, supra,* 53 Cal.3d at p. 319, fn. 1.)

Like the court in *Fogarty* v. *Superior Court* (1981) 117 Cal.App.3d 316 [172 Cal.Rptr. 594], we find the Legislature intended the three-year limitations period to be tolled and extended by *only* three circumstances: fraud, intentional concealment, and the "presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." *Fogarty* addressed the issue of whether the general tolling provisions in section 352 could be used by a plaintiff to extend the three-year limitations period in section 340.5. Under section 352, if a person is insane or a minor or imprisoned, the statutes of limitation which govern causes of action that person might have generally do not begin to run until his "legal disability" no longer exists.[7]

In *Fogarty,* the real party in interest, a person alleging he was rendered incompetent by the negligent medical treatment of certain health care providers, filed suit against them six years after the alleged negligence. The parties disagreed over whether the general tolling provisions in section 352 could be applied to the three-year provision in section 340.5. In addressing the issue, the *Fogarty* court noted that section 340.5 provides that "*in no event*" would the three-year provision be tolled except for the three enumerated tolling reasons. The court said: "There is no evidence of a legislative intent in the instant situation to allow exceptions [to the three-year period] *other than those listed in section 340.5.* All indications of intent are to the contrary. The legislative enumeration of certain exceptions by necessary implication excludes all other exceptions. [Citation.] Furthermore, the Legislature prefaced the list of instances in which the statute is tolled with the proviso that 'in no event' shall the statute be tolled in other instances. Although the statute then goes on to set forth a [separate] calculation of the time period for minors, there is no separate calculation for incompetents [or

---

[7]Section 352 was applied in *John R.* v. *Oakland Unified School Dist.* (1989) 48 Cal.3d 438 [256 Cal.Rptr. 766, 769 P.2d 948], where the plaintiff brought a personal injury action based on allegations he was sexually molested by his mathematics teacher. The action came under the general one-year statute of limitations for torts (§ 340). The court stated: "With certain exceptions, the statute of limitations does not run during the time a potential plaintiff is a minor, and such a party accordingly has up to a year after attaining the age of majority to bring suit on a cause of action for personal injury." (48 Cal.3d at p. 444, fn. 3.)

prisoners] and no indication that the Legislature intended section 352 to act as a residuary for classes not mentioned in section 340.5." (*Fogarty* v. *Superior Court, supra,* 117 Cal.App.3d at p. 320, italics added.)

The reasons expressed by the *Fogarty* court to support its conclusion that section 352 does not extend the three-year limitations period apply with equal force to preclude the ninety-day tolling period in section 364 from extending the three-year period. Although subdivision (d) of section 364 provides that when a plaintiff's notice of intent to sue is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action *shall* be extended, section 340.5 *specifically* provides *only* three enumerated reasons for extending the three-year limitations period. Here, plaintiffs concede that none of the three exceptions are applicable to their case.

Section 340.5 was enacted as part of the Medical Injury Compensation Reform Act (MICRA). "That statute was adopted as a response to a perceived 'major health care crisis in the State of California attributable to skyrocketing malpractice premium costs . . . .' [Citation.] [¶] The legislative response to this perceived crisis included, among other measures, changes in the rules applicable to personal injury actions by malpractice victims. [Citation.] ■■ The plain legislative intent . . . was to treat all malpractice victims differently from other personal injury victims. [Citation.]" (*Young* v. *Haines* (1986) 411 Cal.3d 883, 894 [226 Cal.Rptr. 547, 718 P.2d 909].) In enacting section 340.5 as part of MICRA, the Legislature "sought to retain the substance of the common law [delayed] discovery rule, while modifying its 'open-ended' operation." (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 98 [132 Cal.Rptr. 657, 553 P.2d 1129].) "The 'long tail' claims, the Legislature noted, had been a contributing cause of the perceived malpractice insurance crisis which precipitated MICRA. [Citations.] The clear legislative purpose was to make available to malpractice plaintiffs *only those tolling provisions set forth in the statute.*" (*Young, supra,* 41 Cal.3d at p. 896, italics added.)

■■ Thus, both the limiting language used in the three-year outside limitation portion of section 340.5 and the history of MICRA compel the conclusion that the ninety-day judicially construed tolling provision in section 364 is not applicable to the three-year period. Therefore, plaintiffs' action was not timely filed and was properly dismissed.

## DISPOSITION

The orders appealed from are affirmed. Costs on appeal to defendants.

Klein, P. J., and Kitching, J., concurred.