Filed 1/27/16  Bhinder v. KF Ontario LLC CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SUKHWANT BHINDER, | |
| Plaintiff and Appellant, | E062092 |
| v. | (Super.Ct.No. CIVRS1303821) |
| KF ONTARIO LLC, | O P I N I O N |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Thomas S. Garza, Judge.  Affirmed.

The Lawyers Group, Inc. and Stephen D. Counts for Plaintiff and Appellant.

Garcia, Artigliere & Medby, Stephen M. Garcia, William M. Artigliere and Mark A. Schadrack for Defendant and Respondent.

## I.  INTRODUCTION

Plaintiff and appellant, Sukhwant Bhinder, appeals from the judgment dismissing her wrongful death and survivor action based on the alleged negligence of defendant and

respondent, KF Ontario, LLC dba Ontario Healthcare Center, in causing a foot injury that resulted in the death of her husband on December 29, 2011, while the husband was a resident in defendant's skilled nursing facility. The trial court granted defendant's motion for summary judgment on the ground that plaintiff failed to file her complaint within the one-year limitations period for claims of "injury or death against a health care provider based upon such person's alleged professional negligence." (Code Civ. Proc., § 340.5.)[1]

On appeal, plaintiff claims summary judgment was erroneously granted because (1) there were triable issues of material fact concerning whether the husband was injured as a result of defendant's "professional," as opposed to "ordinary," negligence, to which a two-year limitations period applies (§ 335.1), and (2) the trial court's exclusion of "key evidence," namely, defendant's skilled nursing facility license, precluded the granting of summary judgment. We reject plaintiff's contentions and affirm the judgment.

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed her original complaint on May 31, 2013, alleging one cause of action for general negligence. She filed her operative second amended complaint on December 30, 2013, alleging causes of action for negligence, wrongful death, and "[s]urvival [a]ction," each based on defendant's alleged negligence in causing her husband's foot injury resulting in his death. Plaintiff alleged in her operative complaint

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

that her husband's injury occurred due to defendant "negligently and violently slamm[ing] the [husband's] foot into a door frame, causing extreme and substantial injuries." She also alleged that her husband passed away on December 29, 2011, "[a]s a direct and proximate result of the negligence and breach of duty owed" by defendant.

It is undisputed that plaintiff's husband was a resident of defendant's facility and that the husband was injured at the facility on November 5, 2011, when his foot struck a door frame while an employee of the facility was transporting him in a wheelchair. It is further undisputed that plaintiff's husband passed away on December 29, 2011.

In its answer to the operative complaint, defendant generally asserted, among other affirmative defenses, that plaintiff's entire action was barred by the statute of limitations. Defendant then filed and served its motion for summary judgment asserting that plaintiff's claims were barred by the one-year limitations period for claims based on the professional negligence of a licensed health care provider. (§ 340.5.) Defendant submitted a separate statement of undisputed material facts, a "statement of evidence," a request for judicial notice, and declarations, including a declaration from its director of nursing, Manjeet Manhas.

Plaintiff opposed defendant's motion for summary judgment and request for judicial notice, and objected to evidence submitted in support of the motion. The trial court sustained plaintiff's objection to the introduction of defendant's skilled nursing facility license on the ground that it had not been properly authenticated, and denied defendant's request to take judicial notice of the license. It also sustained plaintiff's

objection to Manhas's declaration that "'[t]ransferring patients who are totally dependent upon others for transfers and locomotion on and off the unit through the use of wheelchairs **is** a professional service provided by the Defendant's Facility and one for which Defendant **is** licensed to perform.'" The trial court overruled plaintiff's objection to the introduction of the husband's medical records, along with Manhas's statements that, based upon her review of the medical records, the husband "was identified as a non-ambulatory patient who was dependent upon the mechanical aid of a wheelchair for locomotion on and off the unit," that the husband "was care planned as requiring extensive assistance with transfers and for locomotion on and off unit," and that "[a]pproaches in the care plan included a wheelchair and assistance with transfers and locomotion via a wheelchair on the unit."

### III.  DISCUSSION

A.  *Standard of Review*

Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)  A defendant moving for summary judgment "bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,'" or, as with the statute of limitations defense asserted by defendant here, that there is a complete defense to the action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  An order granting a motion for summary judgment is reviewed independently, as it entails the resolution of a pure

question of law. (*Id.* at p. 860; *Windsor Food Quality Co., Ltd. v. Underwriters of Lloyds of London* (2015) 234 Cal.App.4th 1178, 1184 [Fourth Dist., Div. Two].)

In a motion for summary judgment, the moving party bears the initial burden of production to make a prima facie showing that there are no triable issues of material fact. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) A prima facie showing is one that is sufficient to support the position of the party in question. "No more is called for." (*Id.* at p. 851.) If the moving party carries this burden, the burden of production then shifts, "and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Id.* at p. 850.) The party opposing summary judgment must produce admissible evidence raising a triable issue of fact. (*Ibid.*)

B. *The "Licensing" Issue*

Under the Medical Injury Compensation Reform Act (MICRA) (Civ. Code, § 3333.2), "an action for injury or death against a health care provider based upon such person's alleged professional negligence" must be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first." (Code Civ. Proc., § 340.5.) For purposes of Code of Civil Procedure section 340.5, a health care provider includes a "health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code." (Code Civ. Proc., § 340.5, cl. (1).) A licensed skilled nursing facility is a health care provider for purposes of Code of Civil Procedure

section 340.5.  (*Alcott Rehabilitation Hospital v. Superior Court* (2001) 93 Cal.App.4th 94, 97, 100-101.)

Plaintiff argues the trial court's exclusion of defendant's skilled nursing facility license submitted in support of the motion for summary judgment should have been fatal to defendant's motion.  Without the license, plaintiff argues, defendant failed to make a prima facie showing that it was a licensed health care provider subject to the one-year limitations period of section 340.5.  Plaintiff is incorrect.

As noted, the trial court sustained plaintiff's evidentiary objections to (1) defendant's skilled nursing facility license on the ground that it had not been properly authenticated, and (2) Manhas's statement that "[t]ransferring patients who are totally dependent upon others for transfers and locomotion on and off the unit through the use of wheelchairs is a professional service provided by the Defendant's Facility *and one for which Defendant is licensed to perform*."  (Italics added.)  The following relevant portion of Manhas's declaration was admitted into evidence:  "In my capacity as the Director of Nursing for the Defendant Facility I am familiar with the requirements as outlined in Title 22 California Code of Regulations § 72000 et seq. governing the licensing and certification of skilled nursing facilities in the State of California, such as the Defendant Facility."

Based on Manhas's declaration, the trial court reasonably inferred that defendant was a licensed skilled nursing facility, which is considered a health care provider for purposes of section 340.5, clause (1).  (*Alcott Rehabilitation Hospital v. Superior Court*,

*supra*, 93 Cal.App.4th at pp. 97, 100-101.) As the director of nursing for defendant's facility, and as someone who was familiar with state regulatory requirements governing the licensing and certification of skilled nursing facilities, Manhas was competent to aver that defendant's facility was a licensed skilled nursing facility. Thus, defendant met its initial burden of making a prima facie showing that it was a licensed health care provider, even without its skilled nursing facility license, for purposes of section 340.5.

In response, plaintiff did not submit any evidence indicating that defendant was not a licensed health care provider. Furthermore, while this appeal was pending, defendant filed a request for this court to take judicial notice of its skilled nursing facility license issued by the Department of Public Health. In the alternative, defendant moved this court to take evidence of the license. The ruling on defendant's motion was reserved for consideration with this appeal, and plaintiff did not oppose the motion.

Judicial notice of documents may be taken assuming there is no genuine dispute regarding the document's authenticity, or where any disputes are easily resolved "by resort to sources of reasonably indisputable accuracy." (Evid. Code, § 452, subd. (h); *Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 184, 186.) A document is authenticated when sufficient evidence has been produced to sustain a finding that the document is what it purports to be. (Evid. Code, §§ 1400, 1401; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 321.) Section 452, subdivision (c) of the Evidence Code permits judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments . . . of any state of the United States." A

hospital's license issued by the State Department of Public Health is properly subject to judicial notice under the Evidence Code. (*Arroyo v. Plosay* (2014) 225 Cal.App.4th 279, 296.)

The trial court excluded defendant's license from evidence, and denied defendant's request to take judicial notice of the license, because defendant attempted to have its attorney authenticate the license. On appeal, defendant had the administrator of its skilled nursing facility authenticate the license. This is sufficient to authenticate the license. As in *Arroyo*, the skilled nursing facility license submitted by defendant was issued by the Department of Public Health, an official act of the executive department of this state. (*Arroyo v. Plosay*, *supra*, 225 Cal.App.4th at p. 296.) For this reason, we grant defendant's request to take judicial notice of its license. In sum, undisputed evidence shows defendant is a licensed health care provider; thus, plaintiff's action is governed by the one-year limitations period of section 340.5.

C. *The "Professional" Versus "Ordinary" Negligence Issue*

The one-year limitations period of section 340.5 commences to run when plaintiff first becomes aware of the physical manifestations of the injury, or on the date of death. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404.) The plaintiff must bring the suit within one year after he or she discovers, or should have discovered, the injury. (*Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1300; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 278-280.) Here, it is undisputed that the limitations period, whether the one-year (§ 340.5) or two-year (§ 335.1) period, accrued and began to run on

December 29, 2011, the date plaintiff's husband died.  Thus, plaintiff's entire action is time-barred if the one-year limitations period applies, because the action was not filed until May 31, 2013, more than one year after plaintiff's husband's injury and death.

"'Professional negligence,'" as is used in section 340.5, "means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death . . . ." (§ 340.5, cl. (2).)  "Professional negligence" encompasses actions in which "the injury for which damages are sought is directly related to the professional services provided by the health care provider" or directly related to "a matter that is an ordinary and usual part of medical professional services."  (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 191, 193; *Arroyo v. Plosay*, *supra*, 225 Cal.App.4th at p. 297.)

Relying primarily on *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992 and *Bellamy v. Appellate Department* (1996) 50 Cal.App.4th 797, the trial court determined that the one-year statute of limitation applied to plaintiff's claims, as "the negligence [causing the husband's foot injury] occurred in the rendering of services for which a provider is licensed."  The trial court also found that it was "abundantly clear that [defendant] is licensed to do the type of nursing care that they were involved with the decedent" and that plaintiff submitted no evidence to contradict defendant's licensure.  We agree with the trial court.

Plaintiff claims her action is based on the "ordinary," not "professional," negligence of defendant in causing her husband's foot injury and resulting death. She relies on the holding of *Gopaul v. Herrick Memorial Hosp.* (1974) 38 Cal.App.3d 1002, which concluded that a patient's injury, caused when she fell from a gurney after being left unstrapped, was due to the hospital's "ordinary," not its "professional" negligence. (*Id.* at p. 1007.) This distinction between the two types of negligence, both of which were subject to a one-year limitation period, was relevant in *Gopaul* because, at the time the patient was injured, the limitation period for claims based on "professional" negligence did not begin to run "until the plaintiff . . . discovered, or through the use of reasonable diligence should have discovered, the tortious injury," whereas no such tolling of the limitation period existed for actions founded on ordinary negligence. (*Id.* at p. 1005.) Because *Gopaul* recognized the distinction between "ordinary" and "professional" negligence, defendant argues her claims are not time-barred because she filed her action within the two-year limitations period for ordinary negligence claims. (§ 335.1.)

However, *Gopaul* predated the enactment of the MICRA in 1975. Post-MICRA cases have been critical of *Gopaul* and have rejected its distinction between ordinary and professional negligence, including for purposes of section 340.5.[2] In *Flowers*, the court

_____

**2** Plaintiff also cites to *Flores v. Presbyterian Intercommunity Hospital* (2013) 213 Cal.App.4th 1386, review granted May 22, 2013, S209836, where the court concluded the hospital's negligent maintenance of its premises amounted to ordinary rather than professional negligence. As an opinion is no longer considered published if

*[footnote continued on next page]*

rejected the distinction between "ordinary" and "professional" negligence that plaintiff urges us to adopt. In *Flowers*, an emergency room patient brought a negligence action against a hospital and a nurse for damages arising from a fall from a hospital gurney. The *Flowers* court held that distinguishing between different types of negligence was "misplaced in resolving a motion for summary judgment in which the question is whether the moving party has demonstrated or negated negligence as a matter of law." (*Flowers v. Torrance Memorial Hospital Medical Center*, *supra*, 8 Cal.4th at p. 997.) The *Flowers* court further explained that whether negligence is deemed ordinary or professional "is immaterial to resolving a motion for summary judgment" based on a plaintiff's personal injuries allegedly caused by a hospital's negligence (*id.* at p. 1000, fn. omitted), as the proper inquiry is whether the health care provider breached its duty to exercise "ordinary prudence" based on "'the knowledge, skill and care ordinarily possessed and employed by members of the profession. . . .' [Citation.]" (*Id.* at p. 998.) Additionally, plaintiff cannot evade the one-year limitations period (§ 340.5) under MICRA by asserting non-MICRA causes of action, as "'the courts must determine whether it is nevertheless based on the "professional negligence" of the health care provider so as to trigger MICRA.'" (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 353.)

Although plaintiff is correct that *Gopaul* technically remains good law, the *Flowers* court was critical of *Gopaul*, though it did not expressly overrule *Gopaul*

---

*[footnote continued from previous page]*
the Supreme Court grants review (Cal. Rules of Court, rule 8.1105(e)(1)), plaintiff may not rely on *Flores* (Cal. Rules of Court, rule 8.1115(a)).

because *Flowers* did not involve the statute of limitation issue presented in *Gopaul*. However, the *Flowers* court stated that "to the extent [*Gopaul*] may be inconsistent with the analysis herein, it is disapproved." (*Flowers v. Torrance Memorial Hospital Medical Center*, *supra*, 8 Cal.4th at p. 1002, fn. 6.) Thus, *Gopaul* is no longer good law to the extent it may be interpreted as calling for a distinction to be made between "ordinary" and "professional" negligence for purposes of section 340.5.

Other post-MICRA cases have also been critical of *Gopaul*. In *Murillo v. Good Samaritan Hospital* (1979) 99 Cal.App.3d 50 [Fourth District, Division Two], which was decided four years after the passage of MICRA in 1975, a patient sued a hospital for personal injuries when she fell out of a bed whose rails had been left down. This court affirmed the judgment in favor of the hospital, rejecting the contention that the determination of whether the hospital's actions constituted professional negligence depended on "whether the situation calls for a high or a low level of skill, or whether a high or low level of skill was actually employed." (*Id.* at p. 57.) Rather, it concluded that "the test is whether the negligent act occurred in the rendering of services for which the health care provider is licensed. When a seriously ill person is left unattended and unrestrained on a bed or gurney, the negligent act is a breach of the hospital's duty as a hospital to provide appropriate care and a safe environment for its patients." (*Ibid.*) This court also recognized that *Gopaul* was decided under the law before the enactment of MICRA and, although it declined to determine whether that case was correctly decided, it concluded that "the result reached in *Gopaul* is incompatible with the definition of

professional negligence found in section 340.5." (*Murillo v. Good Samaritan Hospital*, *supra*, at p. 57.)

In *Bellamy*, the court held that a fall from an x-ray table constituted professional negligence under section 340.5 and rejected the plaintiff's contention that the hospital's negligence was ordinary negligence because the need to restrain a patient on an x-ray table was "'obvious to all.'" (*Bellamy v. Appellate Department*, *supra*, 50 Cal.App.4th at p. 806.) The court agreed with *Murillo* that "professional negligence" under MICRA "focuses on whether the negligence occurs in the rendering of professional services, rather than whether a high or low level of skill is required." (*Bellamy v. Appellate Department*, *supra*, at p. 807.) Similarly, in *Williams*, the court concluded that "[t]o find whether an action arises out of the professional negligence of the health care provider, the 'allegations that identify the nature and cause of a plaintiff's injury must be examined to determine whether each is directly related to the manner in which professional services were provided.' [Citation.]" (*Williams v. Superior Court* (1994) 30 Cal.App.4th, 318, 325.) The *Williams* court also agreed with the holding of *Murillo* "that it is not the degree of skill required but whether the injuries arose out of the rendering of professional services that determines whether professional as opposed to ordinary negligence applies." (*Williams v. Superior Court*, *supra*, at p. 327.) Because the plaintiff phlebotomist in *Williams* sustained injuries while drawing blood from a patient whose violent tendencies were known to the defendant rehabilitation institution, the court held the plaintiff's

allegations arose out of the professional negligence of the rehabilitation institution. (*Id.* at p. 321.)

As noted, it is undisputed that the husband sustained his injury on November 5, 2011, while a resident at defendant's facility, and that he died on December 29, 2011. Thus, the limitations period on plaintiff's claims, whether one year (§ 340.5) or two years (§ 335.1), commenced on December 29, 2011. Plaintiff filed her original complaint on May 31, 2013, approximately one and a half years after the husband's death. Defendant adduced undisputed evidence that it was a licensed health care provider for purposes of section 340.5, and that its professional services included the preparation of a resident care plan for the husband, "a non-ambulatory patient who was dependent upon the mechanical aid of a wheelchair for locomotion on and off the unit" who "was care planned as requiring extensive assistance with transfers and for locomotion on and off unit." Because it is undisputed that the husband suffered the foot injury while being transported in a wheelchair by defendant's employee while a resident at defendant's facility, the husband's injuries arose out of the rendering of professional services by defendant, to which the one-year limitation period of section 340.5 applies. Because plaintiff did not file her lawsuit within one year of her husband's death, defendant's motion for summary judgment was properly granted.

## IV. DISPOSITION

The judgment is affirmed. Each party shall bear their respective costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
                                                                    J.


We concur:

RAMIREZ
                    P. J.

McKINSTER
                    J.